UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORI NEWMAN, ) | |
|     Plaintiff, ) | |
| ) | |
|   vs. ) | 1:10-cv-1739-TAB-JMS |
| ) | |
| SUN LIFE ASSURANCE COMPANY OF ) | |
| CANADA, ) | |
|     Defendant. ) | |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

**I.     Introduction**

Plaintiff Lori Newman has a long history of epilepsy and began experiencing increased seizures in 2009.  She ceased working in July 2009 after experiencing a seizure while driving. Plaintiff applied for long-term disability benefits.  Defendant Sun Life Assurance Company denied her claim.  Plaintiff challenges this decision pursuant to the Employee Retirement Income Security Act of 1974.

Plaintiff contends that Defendant's decision is arbitrary and capricious because Defendant failed to consider certain parts of Plaintiff's medical history and the denial does not discuss the report of her vocational expert, Dr. Michael Blankenship.  Although Defendant need not address every piece of evidence in the medical records, the vocational report and medical history discussed in that report is relevant and contrary to Defendant's decision.  Therefore, the Court agrees that Defendant's failure to address the vocational report and the related medical records is arbitrary and capricious.  As more fully set forth below, Plaintiff's motion for summary judgment [Docket No. 36] is granted to the extent that this case is remanded for the

1

purpose of considering Dr. Blankenship's vocational report. Defendant's cross motion for summary judgment [Docket No. 38] is therefore denied.

## II.     Background

Plaintiff worked at Teachers Credit Union as a sales specialist. [Docket No. 37.] Plaintiff has a long history of epilepsy and began experiencing a higher frequency of seizures in May 2009. [Docket No. 39 at 2.] In July 2009, Plaintiff suffered a seizure while driving, which resulted in a car accident. [Docket No. 37 at 2.] No serious injury was reported, but Plaintiff did not return to work after the car accident. [Docket No. 35-4 at 13.] Plaintiff received short-term disability benefits from her employer and later applied for long-term disability benefits under the Teachers Credit Union Basic Disability Income Benefit and Group Disability Benefit Plan. [Docket No. 39 at 2.]

On April 15, 2010, Defendant denied Plaintiff long-term disability benefits. [Docket No. 35-4.] The April 15 decision set forth Defendant's reasons for denying benefits and reviewed Plaintiff's medical records and the opinions of treating physicians Dr. Pfeiffer and Dr. Reisinger. [*Id.* at 13.] The records indicate a higher frequency of seizures in August 6, 2009, but Dr. Pfeiffer adjusted Plaintiff's medications accordingly. [*Id.*] The new medication scheme resulted in decreased memory and word-finding difficulties, but Plaintiff's physicians recommended some additional adjustments to the medications. [*Id.*] Dr. Pfeiffer also recommended "no driving for 6 months after having any seizure activity and advised [Plaintiff] to avoid any activities that if you have a seizure could result in injury." [*Id.*]

Defendant also cited medical records from Dr. Pfeiffer and Dr. Reisinger that indicate Plaintiff's last reported seizure was in November 2009. [*Id.*] The Attending Physician

Statement provided by Dr. Pfeiffer lists the 6 month driving restriction and prohibits Plaintiff from climbing ladders. [*Id.*] However, Defendant noted that the APS did not restrict Plaintiff from "performing all other activities (i.e. walk, stand, bend, squat, twist, push, pull, balance, kneel, crawl, reach above shoulder level) frequently with sitting marked as continuously." [*Id.*]

Defendant concluded by considering a vocational consultant's assessment of a sales specialist position. [*Id.*] Defendant explained that this occupation requires a light level of exertion, such as carrying, pushing, pulling 20 pounds occasionally, and 10 pounds frequently. [*Id.*] The position also includes walking and standing frequently. [*Id.*] Based on the foregoing, Defendant concluded that "although records provided do support the diagnosis of epilepsy and confirm [that Plaintiff has] been receiving regular treatment and medication for this condition . . . , the restrictions and limitations for a change in your functional status at the time of your disability are not supported." [*Id.* at 14.]

Plaintiff appealed Defendant's April 15 decision and submitted additional evidence, which included Dr. Michael Blankenship's vocational report. [Docket No. 35-5 at 8.] On November 16, 2010, Defendant issued a decision denying Plaintiff's appeal. [*Id.* at 37–41.] The November 16 decision reviewed the evidence and decision from April 15 and considered the new evidence. [*Id.* at 40.] The new evidence included an independent medical records review conducted by Dr. Bruce LeForce, a neurologist and clinical neurophysiologist. [*Id.*]

The November 16 decision summarized Dr. LeForce's assessment, which notes that Dr. Blackwood interpreted a CT scan of Plaintiff's brain as normal, Dr. Bustion interpreted an electroencephalogram ("EEG") test as demonstrating generalized epileptiform discharges, and Dr. Pfeiffer only restricted Plaintiff from driving and working at heights. [*Id.*] Dr. LeForce also

noted that a brief absence spell occurred during the EEG. [*Id.*] Based on these records, Dr. LeForce found that Plaintiff has an impairment based on seizure activity; cannot drive, climb, or operate heavy machinery; but there are no restrictions on sitting, standing, walking, lifting, carrying, reaching, pushing, pulling, or fingering. [*Id.*] Dr. LeForce concluded that Plaintiff is capable of full-time work. [*Id.*] Defendant did not state whether Dr. LeForce considered Dr. Blankenship's report.

Dr. LeForce's report was forwarded to vocational consultant Mary O'Mally, who indicated that the occupation of Customer Service Representative does not involve climbing, working at unprotected heights, working around heavy machinery, or operating a motor vehicle. [*Id.*] O'Mally concluded that Customer Service Representative does not require performing any of the restricted duties. [*Id.*] Defendant also did not state whether O'Mally considered Dr. Blankenship's report. Based on the reviews conducted by Dr. LeForce and O'Mally, Defendant denied Plaintiff's appeal and request for long-term disability benefits. [*Id.* at 41.]

### III.  Discussion

#### A.  *Standard of review*

The parties agree that Plaintiff's long-term disability plan confers discretion to Defendant to interpret its provisions. [Docket No. 37 at 8; Docket No. 39 at 13.] "Where a plan administrator is given discretion to interpret the provisions of the plan, the administrator's decisions are reviewed using the arbitrary and capricious standard." *Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). "Under that standard, an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Id.* Nevertheless, this deferential standard is

not a "rubber stamp," and courts shall not uphold a denial of benefits if the plan administrator fails to articulate specific reasons for rejecting evidence and denying the claim. *Black v. Long Term Disability*, 582 F.3d 738, 745 (7th Cir. 2009); *Kirkpatrick v. Liberty Mut. Grp., Inc.*, 856 F. Supp. 2d 977, 990 (S.D. Ind. 2012). Thus, arbitrary and capricious review "turns on whether the plan administrator communicated 'specific reasons' for its determination to the claimant, whether the plan administrator afforded the claimant 'an opportunity for full and fair review,' and 'whether there is an absence of reasoning to support the plan administrator's determination.'" *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir. 2009).

    *A.    Medical records*

Plaintiff argues that Defendant ignored reliable medical evidence supporting Plaintiff's claim. The medical evidence that Plaintiff claims was ignored is scattered throughout Plaintiff's somewhat meandering briefs and it is unclear whether the significance of this evidence relates to Plaintiff's diagnosis, the restrictions imposed by Plaintiff's treating physicians, Dr. Blankenship's vocational report, or is somehow interrelated. Nevertheless, the Court addresses these issues below.

Some of the medical evidence that Plaintiff references includes the frequency of different types of seizures, staring spells, memory loss, and word-finding difficulties. As outlined above, Defendant addresses these issues to some extent in its decisions. For example, Defendant acknowledges an increase in seizure activity, but also notes that no seizures were reported after November 2009 and the seizure activity did not prevent her from performing her duties. [Docket Nos. 35-5 at 38–40.] Defendant also makes a reference to a staring spell during an EEG [*Id.* at

5

40] and notes changes in Plaintiff's medications as well as memory loss and word-finding difficulties.  [*Id.* at 38; Docket No. 35-4 at 13.]

Although Defendant did not address each staring spell, mention the type and frequency of each seizure, or examine in detail the side effects of Plaintiff's medications, it was not necessary to do so with respect to Plaintiff's diagnosis or the restrictions imposed.  *See Marantz v. Permanente Med. Grp.*, 687 F.3d 320, 328 (7th Cir. 2012) (stating that 29 U.S.C. § 1133 does not "require the plan to identify each and every piece of evidence that it relied upon in reaching its decision to deny benefits.").  Plaintiff's treating physicians, Dr. Pfeiffer and Dr. Reisinger, and neurologist and clinical neurophysiologist Dr. LeForce, reviewed Plaintiff's medical history and concluded that Plaintiff has epilepsy, which prevents her from driving, working at heights, and operating heavy machinery.  Accepting these physicians' conclusions, Defendant reasoned that Plaintiff is capable of physical activity such as standing, walking, sitting, lifting, and pushing.

If Defendant had rejected the opinions of one or some of these physicians, then Defendant would have had to articulate the specific reasons for rejecting their opinions, which would have required a more extensive discussion of Plaintiff's medical history and records.  *Hughes v. CUNA Mut. Long Term Disability Ins.*, No. 1:08-CV-101-SEB-WGH, 2011 WL 902026, at *20 (S.D. Ind. Mar. 14, 2011) (explaining that in rejecting the treating physician's opinion, the defendant properly reviewed and addressed the relevant medical records and provided reasonable explanations for its departure).  However, Defendant accepted the opinions of Dr. Pfeiffer, Dr. Reisinger, and Dr. LeForce, generally discussed the medical evidence, and sufficiently set forth its reasons for concluding that Plaintiff was not totally disabled.  *See*

*Jacobs, Jr. v. Guardian Life Ins. Co. of Am.*, 730 F. Supp. 2d 830, 856 (N.D. Ill. 2010) ("Although the decision letters and peer review reports do not discuss these treating physician opinions in detail, this lack of discussion is justified in that the opinions of the peer review physicians and Jacobs' treating physicians did not diverge when applied to the actual Policy language."). Thus, Defendant's decision is not arbitrary and capricious to the extent that Defendant needed to discuss Plaintiff's medical history and records in detail as they relate to Plaintiff's diagnosis of epilepsy and the restrictions set forth by the physicians.

      B.     *Vocational report*

Although Defendant need not discuss medical records in detail when accepting the diagnosis of epilepsy and the related restrictions, Dr. Blankenship's report looks at the cumulative effect of Plaintiff's medical conditions in the context of employment and concludes that Plaintiff is not capable of returning to the workforce. Plaintiff contends that Defendant ignored the report and failed to appropriately discuss the medical evidence as it relates to Dr. Blankenship's conclusion. The Court agrees.

      Blankenship interviewed Plaintiff, reviewed the medical records, and concluded:

> that she is an individual who is currently not capable of returning to the workforce in any capacity. Ms. Newman has a history of seizure disorder which is not being adequately maintained via medication. In fact, she experienced an automobile accident which was related to her seizure activity. In so much as she has no aura and that the seizures are not precipitated by any particular behavior or condition, it would follow that Ms. Newman might experience at least one half day per month during which time she is incapable of functioning. In addition, she has multiple short term lapses related to her petite mal seizure disorder.
>
> As Dr. Pfeiffer noted there are no significant limitations with respect to walking, sitting, standing, bending, lifting, carrying, squatting, twisting, pushing, pulling, balancing, kneeling, crawling, and reaching above shoulder level. But it was strictly noted that these were not the issues. The issue is the inability to predict the occurrence of a seizure and the activity related to having suffered a seizure. For those reasons, Ms. Newman would not be a reliable candidate in a work setting. In addition to the immediate affect [sic] of her seizure

>disorders, Ms. Newman experiences difficulty with memory and word finding. In total, these conditions would erode the occupational base defined the U.S. Department of Labor.

[Docket No. 37 at 11–12.]  Thus, Dr. Blankenship raises numerous issues with Plaintiff's medical history as it relates to her inability to work as a reliable candidate.

Defendant's September 21, 2010, letter to Plaintiff [Docket No. 35-5 at 8] acknowledges that Plaintiff submitted Dr. Blankenship's report, but Defendant does not discuss or reference the report in its November 16, 2010, decision. [Docket No. 35-5 at 40–41.]  On the contrary, Defendant's November 16 decision specifically sets forth the records that Dr. LeForce relied upon.  These records include those from Dr. Blackwood, Dr. Bustion, Dr. Pfeiffer, and "other neurologists," but the decision does not mention Dr. Blankenship or address his contrary findings. [Docket No. 35-5 at 40.]  Defendant also discusses the opinion of vocational expert O'Mally, but fails to mention the contrary opinion of Dr. Blankenship.  [*Id.*]  Because Dr. Blankenship's report is relevant and reaches a contrary conclusion, Defendant should have addressed the report. *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009) (requiring plan administrators to "address any reliable, contrary evidence submitted by the claimant.").

Defendant responds by arguing that "Dr. LeForce reviewed the medical records and Dr. Blankenship's vocational report in which Plaintiff reported these symptoms, but these were subjective reports and not sustained by the record." [Docket No. 39 at 23.]  Defendant also asserts that nurse Dirck considered side effects of Plaintiff's medication and that Dr. Risinger found Plaintiff's long- and short-term memory to be intact.  [*Id.* at 24.]  Defendant, however, never set forth this explanation in its decision.

The focus of the arbitrary and capricious standard is to ensure that the plan

administrator's reasons for denial "meet ERISA's requirement that specific and understandable reasons for a denial be communicated to the claimant." *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 397 (7th Cir. 2009). Even when records are based on subjective complaints, Defendant must still explain the reasons for dismissing those complaints. *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 834 (7th Cir. 2009) (explaining that "complaints of pain cannot be dismissed out of hand because they are subjective."). The same applies when discounting a contrary expert opinion. *Kirkpatrick v. Liberty Mut. Grp., Inc.*, 856 F. Supp. 2d 977, 991 n.9 (S.D. Ind. 2012) ("It is true that the Defendants did not entirely ignore Dr. Neucks' opinion, but it is also true that, in rejecting Dr. Neucks' opinion that Kirkpatrick was disabled, Liberty Life never explained its basis for doing so.").

Ultimately, Defendant's post hoc explanation for rejecting Dr. Blankenship's report comes too late. *See Univ. Hosp. of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 848 n.7 (6th Cir. 2000) ("[I]t strikes us as problematic to . . . interpret a plan by applying a deferential 'arbitrary and capricious' standard of review, yet . . . allow the administrator to 'shore up' a decision after-the-fact by testifying as to the 'true' basis for the decision after the matter is in litigation, possible deficiencies in the decision are identified, and an attorney is consulted to defend the decision by developing creative post hoc arguments that can survive deferential review."). Because Defendant failed to address Dr. Blankenship's relevant and contrary report, Defendant's decision is arbitrary and capricious.

This conclusion does not mean that Dr. Blankenship's report requires a finding that Plaintiff is totally disabled. The point is simply that ERISA requires Defendant to address and explain why it accepts or rejects the report in light of the evidence in this case. Retroactive

9

reinstatement of benefits is only a proper remedy in cases where the evidence is "so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Love*, 574 F.3d at 398.  However, the evidence here is not so clear and "when a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case . . . is to remand for further findings or explanations . . . ." *Id.* Accordingly, this case is remanded for further findings consistent with this order.  Although the Court concluded that Defendant need not address every piece of medical evidence, Defendant must discuss medical evidence in Blankenship's report to the extent necessary to set forth Defendant's reasons for accepting or rejecting the report.

**IV.     Conclusion**

For the reasons above, Plaintiff's motion for summary judgment [Docket No. 36] is granted to the extent that this case is remanded for the purposes of considering Dr. Blankenship's opinion.  Defendant's cross motion for summary judgment [Docket No. 38] is therefore denied.

DATED:   12/18/2012

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
mdavidson@hankeylawoffice.com

Mark E. Schmidtke
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C.
mark.schmidtke@ogletreedeakins.com